Okay, this is the case of Elizabeth Jean Harper versus Groh and Pfeiffer. Name of the number is 1170267. The panel before you is myself, Justice James Fitzgerald Smith, Justice Nathouse, and Justice Terry Levin. Terry Levin will probably not be visible because he's taking his dog to be put down right now. So he'll listen to what goes on here on the tape tomorrow. With that in mind, here is our procedures. The appellant will go first and have the opportunity to speak for 10 to 15 minutes. Then we will not interrupt you unless things go way tangent. And then we will ask questions. Then the appellee will have the same 10 or 15 minutes and then we'll ask questions. Then the appellant will close. With that in mind, you may proceed. Thank you very much, Your Honor, and may I please report. I do not have much to say beyond what I have already put forward in my papers. I think the key issue on this appeal is simply whether we brought our very detailed sanction motion within the 30-day period required under the rules. I think our fundamental position is that there can be no final judgment in a case until all issues on the table are resolved. And that was simply not, all the issues on the table were not resolved in this case as a result of the judge's decision on the powers of attorney issue. I think that's really all this appeal is about. And I think in regards to, I think as far as the rest of the presentation goes, I'll just simply rely on the briefs and reserve my time for response. One question which Justice House had brought up to me before is should we actually even be here? Because if the non-fraud tank order stands and we rule that that was within the 30 days, then there's nothing for us to hear because what you guys filed was late. Well, I think our position is that that order, in fact, did not resolve all of the issues in the case. I mean, even if you look at the, even if you take the non-fraud tank order as validly entered, there were still issues remaining to be resolved in the case. And therefore, it was not a final judgment. And it wasn't, in that circumstance, our motion for sanctions was filed well within the 30 day period is our position. Nate, do you have any questions? Yes, what, after the non-fraud tank order was entered, which pending matter was remaining? Well, I think the most fundamental matter was the status of the guardian ad litem. That had not been resolved. You mean the status, you mean the fees for the guardian? No, and I think that's a fundamental point. It was not just the fees. It was the fact of his continuing status in the case. He had not been, his status had not been disposed of. So as a matter of his appointment, he was still the guardian ad litem on the case. It was not, it had not been resolved. Well, that's a collateral issue, basically, isn't it? Because if in fact the respondent understood how to, understood what the meaning of the power of attorney was in 2013, that's end of everything, isn't it? Wasn't that the end of everything? And there was nothing tending except the collateral issues of fees for the GAO? Well, again, I don't believe it was just the collateral issue of the fees. It was his status in general and what power to remain for him to exercise. The POA, there were other issues. For example, in the case, there were also the issue of- Is he even a party? Sorry? Is he a party to the case? Well, he was not a party in the sense of having an appearance on file, but he was appointed with certain powers that he was still able to exercise, including the extent to which our conduct had been defensible in the past. That was an issue- In a mortgage foreclosure case, let's just take an analogy. Let's make an analogy. You got a mortgage foreclosure case pending and court appoints a receiver, and then the defendant comes in on a motion for summary judgment, and the judge says, okay, you're right, defendant. I'm gonna dismiss this case. The case is dismissed. Now, the receiver wants to come in for fees, but that's not really, that wouldn't hold up the filing of any post-trial motions, would it? Well, I feel like I'm trying to think of another way to come about this, because again, there were still allegations in the case that the court's order had not resolved. Concerns- So, James, what? Well, I think the primary one was the extent to which the guardian ad litem could be- He's not a party. He's not a direct party in this. So, what in the case between you and the representative of Harper, what is left when she dismissed it? That's the end of the primary parties. Well- Anything by the guardian ad litem is not a part of that case. Well, I guess, on the one hand, I understand what you're saying. On the other hand, I don't understand going forward then what the status of the guardian ad litem would be in terms of his ability to be involved in the ongoing care of Ms. Harper, because that simply hadn't been resolved. And there were claims about our suitability that went beyond, that were not resolved as a result of the decision on the power of attorney. I think in terms of whether he's, quote, a party, I'm not sure that's entirely controlling, given the fact that he still had powers to exercise in connection with the care of Ms. Harper. And as I said, there had been allegations that had not been resolved regarding the suitability of what had been done with Ms. Harper over the course of our exercise of the power of attorney. Those issues had not been resolved, nor were they automatically disposed of just because the power of attorney was found to have been valid. When was the suitability issue resolved? I don't think it ever was. I don't think it ever was. I think it has to be remanded and finished. I think that's exactly the point. That's exactly the point. Understand if our exercise of the power of attorney was inappropriate somehow, and that was something that the guardian ad litem was charged with determining, then the case is not resolved. I think that's exactly our point. And I don't know how you can really get around that dilemma. As parties, as defendants, if you will, I mean, we were also acting as counsel. That issue was not disposed of. So I think that's exactly the point. And those were serious allegations. I might just add- No, I think we've heard enough on this issue. Okay. Anything further, Nate? No, I don't have any other questions. Okay, Mr. Pfeiffer, you may proceed. May it please the court. Thank you, Your Honor. Good morning to Your Honors and to counsel. And- You know, one thing I just want to point out, both Nate and I are concerned about the key thing being the non-protonc order, because it's basically our position. If the non-protect order is valid, we probably shouldn't even be here because it's our position that the final order, the case was over before the 30. I mean, they didn't, you guys didn't file anything within the 30 days. So it would say that the judgment entered was final if the non-protonic order is good. And Justice, I do agree with you as much as a torpedo is my own appeal. No, I'm just saying I put that out there because we kind of were waiting for Mr. White and we kept honing in on this and said, well, we didn't really address this before in our minds. And it was a point that I think I touched on tangentially in my brief, but the lay of the land is that on March 23rd, the order was entered disposing of all the issues in the case, okay? So that made March 23rd, 2015 order indicated that both cross petitions were dismissed and the court found that the 2013 powers of attorney were valid. So the court made it clear throughout the case that that was the first determination that had to be made. And it wouldn't go further if that question was answered in the negative, whether those powers of attorneys were valid. So with the court finding that the powers of attorney were valid, that essentially terminated the case as of that ruling. In April, when there was a status hearing to go over any post-judgment matters and the fee petition by the GAL, it was raised at that point that the GAL's cross petition had been inadvertently omitted from that March 23rd order. That's why the judge said, I completely forgot, you're right, we'll enter the order dismissing that specific petition not pro-tunk to the March 23rd date. Which then ended the case. Which then ended the case, that's correct. And so, and that's why I'm saying as much as the torpedo is my case, yes, I probably should have filed an appeal within 30 days of March 23rd. I think in looking at this from 30,000 feet, the parties were trying to make sure that, to the extent that the appellate court agreed with the trial court that the final order, or thought that the final order was entered by the court after the briefing on whether the trial court even had jurisdiction, instead of the rule 137 motion. I think we were all kind of playing it safe to make sure that in the event the appellate court believed that the final order was entered after that briefing that we would submit our notices of appeal and go through the appellate briefing and so forth. But to your honor's point, I think you're correct. If the March 23rd, 2015 order finally disposed of all matters in the litigation, which it did, then that April order entering the dismissal of the GAL's petition not pro-tunk doesn't extend that 30 day deadline. A non-pro-tunk order is just to fix something that should have been in the original order. The parties, I think, were obligated to file a notice of appeal within 30 days of that March 23rd date, 2015. In both your briefs, you disagree as to what was discussed and it isn't totally clear on the record as to whether there was a discussion closing down the GAL or any reference to the GAL. In the April hearing, your honor? Yeah. The only thing that was addressed- No, back in March, was there anything left undone, I guess is what I say. I shouldn't be saying the GAL because I don't think the GAL is relevant. Is there anything else which in effect brings the non-pro-tunk back that she clearly indicated covering it so that she could enter the non-pro-tunk order? No, your honor. My recollection of that March hearing was that the court ruled in detail, gave all the analysis behind the ruling and indicated that the 2013 powers of attorney were valid. And as such, we don't need to get to the issues of the cross petitions for guardianship. With the powers of attorney being valid, the case was terminated as of that point. The only thing that was left after the March 23rd ruling was the GAL's fee petitions. And presumably anybody else who wanted to file fee petitions, the judge left it open on March 23rd for anybody to file fee petitions. That was done only by the GAL after the March 23rd hearing. And the fee petition was as Justice House indicated, the collateral matter. Fee petition doesn't extend any times for appeal either. So that was the only thing that was left undone was the fee petition for the GAL. All right, Nate, any questions? No, I don't have any questions, no. All right, Kevin, you may finalize. I very much appreciate that. Thank you very much. The non-pro-tunk, the key point on that under Illinois law, I think is crystal clear. A court cannot go back and add something to a record that was not within contemplation at the time of the original order. And that's what the court's admission that she had completely forgotten about that as had all the parties become so central to this appeal. The fact that she did something after the fact that was not within contemplation of either her or the parties goes beyond what you can do with a non-pro-tunk order in Illinois. And that I think we've cited substantial cases on that in our briefs. And I think that's a key point. So it's sort of, I guess there's two points to be made from our position. Number one, the non-pro-tunk to the extent it added something to the record that was clearly not within the contemplation of the court by her own admission in the hearing that she was referring to was improper. And number two, there did remain the issue of the GAL's cross petition. So I think it's, those are, they're sort of related points but they're very closely related and in our view, very powerful. You simply can't fill in something you quote, forgot to do, forgot all about doing with a non-pro-tunk order. And that's exactly what happened here. When the court suggested making the order, not pro-tunk, your opponent argues that you said, right or more or less acquiescent in the court's action. Are you allowed to change horses in midstream and say, okay, that's not the right thing when you initially told the judge that was the right thing to do? Well, that's a fair point, but I don't think the transcript is really that unambiguous on that point. And I think at the time I was simply acknowledging that there was that unaddressed issue. There was that unaddressed issue. I was not in any way, shape or form. And I don't think I have authority under Illinois law to overrule the controlling law on this point by acquiescing in what the court attempted to do. I mean, again, the point is she plainly admitted she had not intended, she had not even had that within her contemplation at the hearing. And for that reason, under Illinois law, she can't use a non-pro-tunk order to fill in a blank that was not, as I said before, within the contemplation of the parties. But again, I don't think my response, I mean, it's an ambiguous response. It caught me by surprise. The whole thing caught me by surprise because it had not been brought up before. And I was acknowledging that, yeah, we had not addressed that. I was not acknowledging that some kind of waiver or some kind of acquiescence in an act that the Illinois law simply does not allow a judge to do. I don't think the parties and the court can together create a reality that didn't exist at the time. And that's exactly what happened here. And it was improper. I should say not improper in the, it was not something that a court can do under Illinois law. Any further questions, Nate? No, I have no further. All right, thank you both. This is unusual because we came up with a question right before the oral, and this has never happened before. But either way, the case, either way the case is done, it's just, did we have jurisdiction or didn't we? Correct, yes, I think that's right. And- We'll go back and look at it again. Yeah, I very much appreciate that because I do think the non-proton point is extremely powerful in this circumstance. All right, thank you both. You both gave us some added input. Thank you.